[No. B203609. Second Dist., Div. Four. Jan. 29, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CIRILO RODRIGUEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion

COUNSEL

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**EPSTEIN, P. J.**—Cirilo Rodriguez appeals from his convictions of attempted murder and mayhem stemming from an attack on his wife, Sandra Rodriguez. His sole contention on appeal is that the trial court erred by instructing the jury that it could consider his failure to explain or deny incriminating facts. In the published portion of the opinion, we conclude there is no constitutional infirmity in the challenged instruction. In the unpublished portion of the decision we conclude there was a sufficient evidentiary basis to warrant giving the instruction.

## FACTUAL AND PROCEDURAL SUMMARY

The victim, Sandra Rodriguez, returned home with her children on the night of April 28, 2005, following a visit with family in Tijuana, Mexico. She found the house in disarray, with the contents of the refrigerator and family photographs on the floor. Flowers were arranged with the photographs as if for an altar or shrine. Appellant was home, but did not know where his car was. Sandra called the police to report the vehicle as stolen. The responding officers advised her to take appellant to the hospital based on his strange behavior. Sandra called her sister to take the children to the sister's house while Sandra took appellant to the hospital.

Appellant convinced Sandra to get some sleep before taking him to the hospital because she was tired. This was around 1:00 a.m. Sandra fell asleep

and was awakened about 3:00 a.m. when she felt a presence standing next to her. Appellant said, "Sandra, I love you very much" "but I have to kill you" and pulled a large knife from behind his back. When appellant made a stabbing motion toward her neck, Sandra grabbed the knife with both hands. As she attempted to get up, her lip was cut by the knife appellant held. Sandra screamed and fought with appellant. She got the knife away from him and ran from the house.

Sandra went to several neighbors' homes, knocking on their doors and screaming in an effort to get help. She dropped the knife before getting to the Garay home, the fifth house she tried. Sisters Sandra and Alicia Garay responded to the screams. Sandra Garay called the police and an ambulance while Sandra Rodriguez collapsed, bleeding, on their porch. The victim kept saying that he was "trying to kill" her and that "he was coming for her."

In response to Sandra Rodriguez's claim that her assailant was coming after her, Alicia went to a bathroom window that gave her a better view of the front lawn. She saw appellant come onto the lawn a short distance from the victim. Appellant said the victim had problems and he was trying to help her. From their position inside their screened front door, Alicia, her sister Sandra, and their father told appellant to move away from the victim. They said this at least 10 times. Appellant finally moved across the street, but continued to say he was the victim's husband and was there to help her. He had one hand clenched and the other in his pocket. Appellant left and walked off. Later that evening he was arrested a short distance away.

Sandra suffered a cut from her lower lip down her chin. It required seven stitches and left a permanent scar. Her right, dominant hand, suffered cuts to tendons, ligaments, and arteries. After two surgeries, Sandra could not feel her index finger, a permanent injury. At the time of trial, she still suffered pain in her wrist. She had numerous scars on her right hand. Her left hand was also severely cut and scarred, but she did not lose feeling or movement in that hand.

Appellant was charged with premeditated attempted murder, aggravated mayhem, and mayhem. He testified in his own defense that he had been using cocaine and crystal methamphetamine heavily for several months. He said that a stuffed animal on the television told him to cut the victim. A defense psychiatrist testified to the effects of heavy cocaine and methamphetamine use.

The jury found appellant guilty of premeditated attempted murder and mayhem with personal weapon use and infliction of great bodily injury as

charged. He was acquitted of aggravated mayhem. Appellant was sentenced to prison for life, consecutive to a term of five years for the enhancements. He filed a timely appeal.

## DISCUSSION

## I

A claim of instructional error is subject to independent review by our court. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].) The challenged instruction, CALCRIM No. 361, reads: "If the defendant failed in [his] testimony to explain or deny evidence against [him], and if [he] could reasonably be expected to have done so based on what [he] knew, you may consider [his] failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove each element of the crime beyond a reasonable doubt. [¶] If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

■ CALCRIM No. 361 is similar in content to CALJIC No. 2.62.[1] Appellant acknowledges that the Supreme Court upheld CALJIC No. 2.62 in *People v. Saddler* (1979) 24 Cal.3d 671, 680–681 [156 Cal.Rptr. 871, 597 P.2d 130] (*Saddler*). In *Saddler*, the court rejected an argument that CALJIC No. 2.62 violated due process rights by denying a defendant the presumption of innocence and instead raising an inference of guilt. (*Saddler, supra*, 24 Cal.3d at pp. 679–680.) The court emphasized that the instruction cautions that the failure of a defendant to deny or explain " 'does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of defendant beyond a reasonable doubt.' " (*Id.* at p. 680.)

Similar cautionary language is included in CALCRIM No. 361, which warns that a failure to explain or deny "is not enough by itself to prove guilt.

---

[1] CALJIC No. 2.62 reads: "In this case defendant has testified to certain matters. [¶] If you find that [a] [the] defendant failed to explain or deny any evidence against [him] [her] introduced by the prosecution which [he] [she] can reasonably be expected to deny or explain because of facts within [his] [her] knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable. [¶] The failure of a defendant to deny or explain evidence against [him] [her] does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt. [¶] If a defendant does not have the knowledge that [he] [she] would need to deny or to explain evidence against [him,] [her,] it would be unreasonable to draw an inference unfavorable to [him] [her] because of [his] [her] failure to deny or explain this evidence."

The People must still prove each element of the crime beyond a reasonable doubt." It further instructs the jury, "If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure." The presumption of innocence is thus incorporated into CALCRIM No. 361. While the language of CALCRIM No. 361 differs somewhat from CALJIC No. 2.62, the reasoning of the Supreme Court in *Saddler, supra,* 24 Cal.3d at page 680 applies with equal force to CALCRIM No. 361 because language preserving the presumption of innocence and explaining the prosecution's burden of proof appears in each. We find no violation of appellant's right to due process based on this instruction.

■ Appellant argues that California standardized jury instructions do not treat a testifying defendant " 'the same . . . as . . . any other witness,' " a factor identified by the United States Supreme Court in *Caminetti v. United States* (1917) 242 U.S. 470, 493 [61 L.Ed. 442, 37 S.Ct. 192] in allowing the jury to consider a defendant's failure to explain or deny incriminating acts in deciding guilt. The *Saddler* court rejected a similar argument that CALJIC No. 2.62 should never be given because it "impermissibly singles out a defendant's testimony and unduly focuses upon it." (*Saddler, supra,* 24 Cal.3d at p. 680.) The court cited its decision in *People v. Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], in which the same argument was rejected. In *Mayberry,* the court noted that CALJIC No. 2.62 is consistent with Evidence Code section 413 which permits the drawing of inferences from any party's failure to explain or deny evidence against him.[2] It reasoned: "Since the only testifying 'party' in a criminal case is the defendant, the code section can have reference only to him." (*Saddler, supra,* 24 Cal.3d at p. 681.) The same reasoning applies with equal force to CALCRIM No. 361, which is consistent with Evidence Code section 413.

Appellant contends that no instruction "tells the jury that it may base a reasonable doubt on a prosecution witness's failure to provide material detail or on inconsistencies among the prosecution witnesses' accounts." Instead, he asserts, CALCRIM Nos. 105 and 226 do not include incomplete or inconsistent testimony in the list of factors to be considered by the jury in determining witness credibility. Respondent reads CALCRIM Nos. 105 and 226 differently, arguing that both instruct the jury that a witness's inconsistent testimony is a factor that may be considered in evaluating the credibility of any witness, whether prosecution or defense.

The trial court gave only the introductory language of CALCRIM No. 105 as part of its pretrial instructions. It did not then read the list of factors which

---

[2] Evidence Code section 413 provides: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."

may be considered in determining credibility of a witness, saying that an instruction would be given before deliberations. However, at the end of trial, CALCRIM No. 226 was given. That instruction informs the jury that it may consider (1) whether the witness made a prior consistent or inconsistent statement; (2) the reasonableness of the testimony in light of other evidence; and (3) whether other evidence proved or disproved any fact about which the witness testified.[3] This instruction told the jury to consider whether the witness made prior consistent or inconsistent statements and the reasonableness of the testimony in light of other evidence. One factor listed told the jury to consider whether other evidence proved or disproved any fact about which the witness testified.

■ As we have concluded, Evidence Code section 413 allows a trier of fact to consider a *party's* failure to explain or deny evidence, a principle expressed in CALCRIM No. 361. This distinguishes a criminal defendant from the other trial witnesses, whether prosecution or defense. Nevertheless, CALCRIM No. 226 allows the jury to consider whether other evidence proves or disproves a fact about which a witness testified in determining credibility. We find no constitutional infirmity in the instruction.

---

[3] As given by the trial court here, CALCRIM No. 226 read: "You alone, must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. The testimony of each witness must be judged by the same standard. You must set aside any bias or prejudice you may have, including any based on the witness's disability, gender, race, religion, ethnicity, sexual orientation, gender identity, age, national origin, or socioeconomic status. You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe. [¶] In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are: [¶] How well could the witness see, hear, or otherwise perceive the things about which the witness testified? [¶] How well was the witness able to remember and describe what happened? [¶] What was the witness's behavior while testifying? [¶] Did the witness understand the questions and answer them directly? [¶] Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided? [¶] What was the witness's attitude about the case or about testifying? [¶] Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony? [¶] How reasonable is the testimony when you consider all the other evidence in the case? [¶] Did other evidence prove or disprove any fact about which the witness testified? [¶] Do not automatically reject testimony just because of inconsistencies or conflicts. Consider whether the differences are important or not. People sometimes honestly forget things or make mistakes about what they remember. Also, two people may witness the same event yet see or hear it differently. [¶] If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest."

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of conviction is affirmed.

Manella, J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 22, 2009, S170862. Corrigan, J., did not participate therein.

---

*See footnote, *ante*, page 1062.