Filed 2/27/14  P. v. Anderson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RANDALL LOGAN ANDERSON,<br><br>    Defendant and Appellant. | F065013<br><br>(Super. Ct. No. SCR011130)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Charles A. Wieland, Judge.

Thomas M. Singman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Randall Logan Anderson was convicted after jury trial of assault with a stun gun (Pen. Code,[1] § 244.5, subd. (b)), first degree burglary (§§ 459, 460, subd. (a)),

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

and child abuse (§ 273d, subd. (a)).  The trial court sentenced defendant to a total term of four years in state prison and imposed a number of fines at sentencing.

On appeal, defendant argues the trial court erred by giving instructions not supported by the evidence.  In addition, he claims the trial court erred in imposing certain fines at sentencing without first determining his ability to pay.  In the alternative, he argues his trial counsel was ineffective for failing to object to the fines.  While we agree the trial court improperly instructed the jury, we find the errors were harmless.  Further, we find defendant failed to preserve his claims relating to the fines, and that he cannot establish ineffective assistance of counsel on this record.  Therefore, we affirm the judgment.

## FACTS

Elizabeth Hunter and defendant were in a romantic relationship for three to four years.  During that time they lived together, along with Hunter's son G.P.  Hunter and defendant ended their relationship in January of 2009, however, the two kept in touch, seeing each other on occasion.  In August of 2010, Hunter informed defendant she was going to date another man and their friendship soured.  Hunter and her son remained in the same home they had shared with defendant during the relevant time periods.  Defendant had left some items, such as a trailer and trucks, on Hunter's property, and he had made arraignments with Hunter to retrieve them.

On September 7, 2010, at approximately 8:00 p.m., 11-year-old G.P. was home alone watching television.  He heard his dogs barking, followed by footsteps on the porch, so he stood up to check on the noise.  Upon hearing the glass door to the home being opened, G.P. said, "You should not be here."  Thinking that whoever was there had left, G.P. walked up to the door to close it when he felt a sharp pain in his abdomen and a shocking sensation.  Simultaneously, he heard a clicking noise similar to the sound a gas stove makes when it is lit.  G.P. never saw what hit him but believed he had been struck by a Taser.  He never saw anyone at the door because the porch light was turned off.

2.

After being stunned, G.P. fell to the ground, but he immediately got up and ran to the back door of the home in an effort to get outside.

G.P. was unable to unlock the back door, so he ran into a bedroom and tried to break a window. Unable to break the window, G.P., hid behind the bed. He could hear someone enter the house and walk to the doorway of the bedroom. There was some light emanating from the bathroom that allowed G.P. to "somewhat" see the person in the doorway, and he could tell it was defendant. He recognized defendant by his distinctive glasses, his face, and his build. Although he never saw his full face, G.P. was "for sure" it was defendant from the details he observed.

Defendant told G.P., "You broke it" and asked why his mother was not answering defendant's phone calls. G.P. recognized defendant's voice when he spoke and was sure it was defendant's voice he heard. G.P. was scared. Before leaving, defendant told G.P. to "stay here," which he did for approximately five minutes. He stayed in the room because he did not want to be shocked again and because he was scared. After approximately five minutes, G.P. got up and went back to watching his television program. He was somewhat scared at the time, but also bored and did not want to be sitting still for so long. G.P. explained he needs to be watching something or reading something to stay still because he is "an energetic kid."

G.P. went back out to the living room to watch television and began cleaning up after himself. During that time he found his cell phone and called his mother to tell her "he" was there. His mother said she would be right home. G.P. did not feel any pain at the time due to his adrenaline, but his abdomen began to hurt later, after his mother arrived home. The pain lasted until the next day.

G.P. testified that although defendant and his mother were no longer dating at the time of the incident, he was unaware of any animosity between them. G.P. also explained that he had a friendly relationship with defendant.

G.P. believed the incident occurred shortly after 8:00 p.m. because he had just begun a television show he watches frequently. When he returned to the television after

defendant left, he could tell the hour-long show was about half way through because of the predicable nature of events on the show. G.P. estimated the whole ordeal took approximately five minutes and it took his mother approximately 30 minutes to arrive home after he called her.

Hunter testified she was working on September 7, 2010, while her son was at home alone. At about 6:10 p.m., Hunter received a call from defendant on her cell phone, but did not answer. Later she called her son to tell him defendant was back in town. She received a call from her son at approximately 8:30, telling her defendant was there. She immediately told him she would be home, left work, and went straight home. The drive takes her approximately 10 minutes.

When she arrived, she asked G.P. if he was alright because he was shaking, and she could tell he was "scared to death." He told her he hurt, and that it hurt when he breathed. Hunter decided to take her son to the neighbor's home to call the police because she has very poor reception at her house and her home is difficult to find. She arrived at the neighbor's within a minute. She called the police and a deputy arrived.

Hunter noted the driveway to her home is very steep. One cannot drive up the driveway in the snow, and it takes approximately 10 minutes to walk up the driveway, including a few stops. There was no snow, however, on the date in question.

Hunter recounted that since the incident, G.P. does not want to be alone and he clings to her.

Sheriff's Deputy Michael Gordon responded to the call, arriving at 9:20 p.m. at the neighbor's house. He was dispatched to the call at 8:55 p.m. He took a statement from G.P. and took a photo of G.P.'s stomach, noting two dots. Based upon his experience with Tasers and G.P.'s description of the event, he opined the marks on G.P. were caused by a Taser. He noted that Tasers make a rapid clicking sound when they are deployed. Deputy Gordon noted G.P. appeared scared and was trembling when he related the incident. G.P. stated it was defendant who had caused his injuries. The deputy never went to the home to inspect the scene or to take pictures or fingerprints.

4.

Dr. Kelly Kriwanek-Rappleye treated G.P. in the emergency room that night. G.P. told the doctor he thought he had been "Tasered." He said he had felt some electricity, and when questioned further he stated he "heard the electricity." He complained of pain to his abdomen, which had subsided by the time he was seen by the doctor. Upon examination, the doctor noted 2 one-centimeter marks on the victim's abdomen. Based upon the history the victim recounted and her physical exam, the doctor had a presumptive diagnosis that the child's injury had been inflicted by a Taser.

*Defense case*

Donald Trainer employs defendant on occasion for gardening and cleanup work on his properties. He has been working with defendant for over 15 years. On September 7, 2010, he met with defendant around 7:30 to discuss some work he wanted defendant to do. He was sure of the time, because he looked at a clock as defendant arrived. Defendant was with him for 20 to 35 minutes, leaving between approximately 7:35 to 7:40 p.m. Trainer lives approximately one mile outside of Oakhurst, and it takes him approximately eight to 10 minutes to get to the center of town.

Herbert Crumb is a defense investigator. He drove from Trainer's residence to Hunter's residence on three occasions taking two different routes. One route took him 30 minutes and the other took 45 minutes. The times were to the bottom of Hunter's driveway and did not include any time it would take to walk up the driveway. He also walked up the driveway, noting that it took 10 minutes. In addition, he drove from Trainer's residence to Wal-Mart in Madera, which took one hour and 20 minutes. He drove at a speed of 55-60 miles per hour during the trip. He did the drive leaving Trainer's residence at 3:42 in the afternoon on a weekday.

Melissa Tabarez is an employee at Wal-Mart in Madera. She was working on the night of September 7, 2010, as a cashier. She identified a receipt indicating a pair of work boots were purchased for cash at 9:15 p.m. The receipt had her operator number on it indicating she was the person who made the sale. However, she did not recall

5.

defendant or recognize him. She stated the receipt matched a box for a pair of work boots sold at that store. The boots are located in the very back of the store.

Defense investigator Michael McDaniel testified he went to the Wal-Mart in Madera in March of 2011 to inquire about video surveillance regarding the night in question and discovered the store does not keep video surveillance longer than 30 days.

Defendant testified that on the day in question he worked until approximately 6:00 p.m. About 7:00 p.m. he went to see Trainer about a job. He recalled arriving at 7:32 p.m. and remained at Trainer's home for 10 to 20 minutes After he left, he drove straight to his aunt's home in Madera. He only remained at the home for a few minutes and then went to Wal-Mart to buy some boots. He recalled it was 8:40 when he pulled into the parking lot. While trying on the boots, an announcement came over the loudspeaker that the store was about to close, so he went to the register to pay for the boots. He recalled waiting in the checkout line for 15 minutes, and bought the boots at 9:15 according to the receipt. He then drove back to his aunt's house where he stayed the night.

Defendant knows Hunter and G.P. well as he was in a relationship with Hunter for over six years. Over the course of the time he lived with them, he left several items of property at the home, including two trailers, various appliances, and other personal property. As the relationship was ending, Hunter told him he could retrieve his property but then did not allow him to do so. Defendant denied going to Hunter's residence and assaulting G.P. on the date in question. Defendant admitted he had previously been convicted of first degree burglary and battery with serious bodily injury in 1994.

*Rebuttal Evidence*

Deputy Gordon testified it took him 25 minutes to travel from central Oakhurst to the victim's residence; however, he wasted 10 minutes driving past the driveway a few times. He also opined it would take less than five minutes to get from the area of Trainer's home to central Oakhurst. He noted the traffic is much lighter around 8:00 p.m. than it would be around 3:42 p.m. on a weekday.

6.

Hunter testified she was familiar with defendant's driving habits and he is a fast driver. Hunter noted she has driven from her home to the Wal-Mart in Madera and it takes 40 to 45 minutes. In addition, she has driven from Trainer's residence to her home and testified the trip takes 20 minutes. She also noted there were several ways to reach her residence that take less time without having to walk up her driveway.

## DISCUSSION

### I. Instructional Error

Defendant makes two claims regarding instructional error. First, he argues the trial court erred in instructing the jury pursuant to CALCRIM No. 207 that the prosecution need not prove the crime took place exactly on a specific date, but rather "happened reasonably close to that day." Second, he argues the court's instruction with CALCRIM No. 361 regarding how to evaluate testimony when the defendant fails to explain or deny adverse evidence was not supported. The People concede these instructions were improper, however, argue the error was not prejudicial. We agree.

#### A. CALCRIM No. 207

Pursuant to the prosecutor's request, the jury was instructed with CALCRIM No. 207 as follows: "It is alleged that the crime occurred on September 7, 2010. The People are not required to prove that the crime took place exactly on that date, but only that it happened reasonably close to that date."

Defendant's counsel objected to this instruction, explaining that the defense was alibi and although "we have had testimony as to the exact time when this allegedly occurred, I'm just … concerned that that might confuse the jury." The court noted the evidence was consistent as to both the date and time of the offense and questioned how the jury would be confused by the instruction. Defense counsel responded that her primary "concern … is that they would be confused as to whether or not they could consider other times, or, you know, it might have happened earlier or later when we need—when the evidence has been fairly specific." The court overruled the objection.

7.

Ordinarily, the People need not plead the exact time of commission of an alleged offense.  (§ 955.)  However, "when the prosecution's proof establishes the offense occurred on a particular day to the exclusion of other dates, and when the defense is alibi (or lack of opportunity), it is improper to give the jury an instruction using the 'on or about' language."  (*People v. Jennings* (1991) 53 Cal.3d 334, 359; see *People v. Jones* (1973) 9 Cal.3d 546, 557, overruled on other grounds in *Hernandez v. Municipal Court* (1989) 49 Cal.3d 713, 719, and overruled by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069; accord, *People v. Richardson* (2008) 43 Cal.4th 959, 1027.)

Providing such an instruction where the defense is alibi or lack of opportunity to commit the offense is error because an "instruction which deflects the jury's attention from temporal detail may unconstitutionally impede the defense."  (*People v. Barney* (1983) 143 Cal.App.3d 490, 497.)  The bench notes for CALCRIM No. 207 recognize this principle and explain "this instruction should not be given … when the evidence demonstrates that the offense was committed at a specific time and place and the defendant has presented a defense of alibi or lack of opportunity …."  (Judicial Council of Cal., Crim. Jury Instns. (Fall 2013 ed.) Bench Notes to CALCRIM No. 207, p. 47.)  In *People v. Jones*, our Supreme Court acknowledged this is a correct statement of the law, recognizing in a case of alibi it is erroneous to instruct the jury that the day the offense was committed is immaterial.  (*People v. Jones*, *supra*, 9 Cal.3d at p. 557.)

Here, the evidence established the offenses were committed on a specific date and time and the defense was alibi.  As such, it was error to instruct the jury pursuant to CALCRIM No. 207.  (*People v. Jones*, *supra*, 9 Cal.3d at p. 557; *People v. Barney*, *supra*, 143 Cal.App.3d at p. 497.)  In *People v. Seabourn* (1992) 9 Cal.App.4th 187, this court held that giving a similar instruction was harmless "beyond a reasonable doubt," in part because the evidence was overwhelming (*id.* at p. 194), but also because the instruction did not actually prevent the jury from considering the defendant's alibi defense.  In *Seabourn*, the court instructed the jury with CALJIC No. 4.71, the predecessor instruction to CALCRIM No. 207, where the prosecution presented evidence

8.

of the exact dates and times of the crime and the defense provided an alibi for those dates and times. (*Seabourn*, at p. 194.) We explained that, at most, the giving of the instruction "might confuse a jury where there is no evidence to support it. However, under the facts here, where the entire case was based upon specific times and places, such confusion would not have taken place." (*Ibid*.)

*Seabourn* noted that *Jones* was distinguishable because in *Jones*, "there was the initial evidence the crime occurred on an earlier date. And although the witness corrected this mistake, it was possible the jury could have relied upon the earlier statement by the witness." (*People v. Seabourn*, *supra*, 9 Cal.App.4th at p. 194.) We find the same distinction present here. The evidence in this case established the crime was committed at a specific time on a specific date. Nothing in the evidence suggested the crime could have been committed at either an earlier or later time.

For the same reasons we find defendant's reliance on *People v. Morris* (1906) 3 Cal.App. 1 and *People v. Barney*, *supra*, 143 Cal.App.3d 490 inapposite. In *People v. Morris*, the defendant was charged with statutory rape. The evidence established the offense occurred at approximately 4:00 p.m. on a specific day in a specific house. The defendant produced an alibi for that time, however, there was evidence the defendant and the victim were alone together in the home during other parts of the day. In addition, there was considerable evidence adduced at trial of a continuing pattern of sexual abuse by the defendant against the young victim over the course of several years before the crime alleged. During deliberations, the jury asked if it was limited in its consideration to the specific time mentioned in the evidence. The court instructed the jury it could consider the entire day. In light of the evidence, the jury's specific questions, and the court's instructions, the appellate court found a possibility the jury could have believed the defendant's alibi yet still convicted him of an act occurring at a different time that day. (*People v. Morris*, *supra*, at p. 10.) Therefore, the court reversed the defendant's conviction.

Likewise, in *People v. Barney*, the defendant was charged with several lewd and lascivious acts with the victim. As to one count, there was evidence the crime took place sometime over the course of a weekend. The defendant presented evidence that he could not have committed the crime because others were present during the relevant time period. However, there "was also testimony numerous other molestations occurred between the Christmastime offense and the terminal offense in issue. These circumstances present a substantial possibility the jury was misled concerning the necessity to agree defendant molested the child during" the relevant time period. (*People v. Barney*, *supra*, 143 Cal.App.3d at p. 498.) Because there was evidence of other uncharged acts that could have formed the basis of the conviction but were outside of the charged time period, the instruction "that the prosecution need not specifically prove the time of the charged offense, coupled with the prosecution argument it need prove only a last act, not the time of the last act" was prejudicial error. (*Ibid.*)

In each of the above cases, the jury was presented with evidence that in addition to the charged date of the crime, the crime could have also been committed on a different date or time. Thus, the evidence allowed the jury to find the defendant had an alibi for the time of the crime, but could also find the crime occurred at another time. In that situation, the jury could both believe the defendant's alibi and still find him guilty of the offense because the instruction allowed the jury to focus on a different time period for the crime, thus prejudicially impeding the defendant's defense.

However, such a finding is not possible under the facts of this case. All of the evidence established the crime took place on a specific day, namely September 7, 2010, at a specific time, between 8:00 and 8:30 p.m. Indeed, the jury was focused on the specific time period from the opening statement of counsel through closing arguments. Defendant's defense of alibi, in the form of driving to his aunt's house and then to Wal-Mart, was quite clear. He claimed he could not have committed the crime because he was elsewhere during the offense. Although the parties disagreed as to the amount of time it took to travel to the different locations at issue, the parties all agreed the crime

10.

was committed between 8:00 and 8:30 p.m. on September 7, 2010. There was no argument or inference possible from the evidence that defendant could have simply committed the crime at another time that day. Rather, the dispute was whether defendant's alibi was in fact an alibi at all, in that the prosecution argued defendant had sufficient time to visit with Trainer, drive to the victim's home and commit the offense, and still have time to drive to Wal-Mart to buy boots. This was because the parties disputed the amount of time it would take to drive to each location. There was no evidence any other acts took place at a different time that the jury could have considered as a basis for the conviction. Both parties focused on the specific time period presented in the evidence. In addition to closing arguments focusing specifically on this time frame, the trial court gave an instruction regarding alibi, informing the jury the People had the burden of establishing defendant was present and committed the crime, and any reasonable doubt as to defendant's presence must result in a not guilty verdict. Based on the evidence, the jury could not find defendant had an alibi for the time of the offense and still find him guilty as in *People v. Jones*, *People v. Morris*, or *People v. Barney*. Rather, this case is more like *People v. Seabourn*. Thus, although it was error to give the instruction, based upon the facts of the case, the error was harmless under any standard, as at most, the instruction could have only been confusing.

We likewise reject defendant's argument the instruction could have been interpreted by the jury to allow a conviction even if it were to find defendant had an alibi for the 8:00 to 8:30 time frame. The instruction itself never mentions the time of the crime, only the date. Because the instruction mentions the People need not prove the crime was committed "exactly on that date," defendant argues the jury could have interpreted the instruction to mean it "need not find that the offense occurred at an 'exact' time 'on that day.'" However, this clause is immediately preceded by the words "but only that it happened reasonably close to that day." (CALCRIM No. 207.) Read as a whole, there is simply no reasonable likelihood the jury could have read the instruction in the manner defendant suggests. (E.g., *People v. Richardson*, *supra*, 43 Cal.4th at p. 1028

11.

["'In reviewing [a] purportedly erroneous instruction[], "we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution"'"].)

Defendant's argument that the error was prejudicial due to the length of deliberations, the request for readback of witness testimony, and the conflicting nature of the testimony misses the mark. While such factors may indicate a close case, they have no bearing on the issue here, namely whether the jury could have interpreted the evidence in such as way as to allow it to find defendant had an alibi for the time in question, yet still convict him of the offense. As the evidence does not allow for such a finding, the error was necessarily harmless. (See *People v. Seabourn*, *supra*, 9 Cal.App.4th at p. 194.)

## B. CALCRIM No. 361

During the jury instruction conference, the trial court addressed CALCRIM No. 361, noting it had made minor corrections to the instruction and that "it deals with [defendant's] testimony." There was no objection to the instruction, and the trial court later instructed the jury as follows:

> "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so, based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

Despite defendant's failure to object to the instruction below, the claim is nevertheless reviewable if the alleged error affected defendant's substantial rights. (§ 1259.) "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.) We will, therefore, address the merits.

12.

Defendant contends, and plaintiff concedes, giving the above instruction in this case was error because there was no evidence defendant failed to deny or explain the evidence against him. We accept plaintiff's concession, as the record discloses no evidence to support this instruction. (*People v. Saddler* (1979) 24 Cal.3d 671, 681-683 [instructing jury with CALJIC No. 2.62, the predecessor instruction to CALCRIM No. 361, was error where defendant did not fail to explain or deny any adverse evidence].)

Having decided the trial court erred in instructing the jury with CALCRIM No. 361, we turn to the question of whether the error was prejudicial. Defendant claims we must apply the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18.[2] However, the *Chapman* standard only applies to errors of a federal constitutional dimension. (*Chapman v. California*, at p. 24.) Although it is error to give an instruction which correctly states a principle of law but has no application to the facts of the case, if that is the only error, it does not implicate federal constitutional rights. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129; see also *People v. Rodriguez* (2009) 170 Cal.App.4th 1062, 1066-1068 [no constitutional infirmity in instructing the jury with CALCRIM No. 361].) Courts have "rather uniformly" applied the harmless error standard adopted in *People v. Watson* (1956) 46 Cal.2d 818, 836, when reviewing the erroneous use of CALJIC No. 2.62, the predecessor instruction to CALCRIM No. 361. (*People v. Roehler* (1985) 167 Cal.App.3d 353, 393.) Further, our Supreme Court has held CALJIC No. 2.62, the substantially similar predecessor to CALCRIM No. 361, does not deprive a defendant of due process by denying the defendant a

---

[2]In a single sentence defendant argues "that where instructional error unfairly weakens the defense theory of the case, it implicates the due process right to present a defense." However, defendant has made no attempt to demonstrate how giving the instruction in this case "weaken[ed] the defense theory of the case." As such, he has failed to raise the issue on appeal. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

In any event, we note arguments that the instruction deprives a defendant of due process have been rejected by our Supreme Court. (*People v. Saddler*, *supra*, 24 Cal.3d at pp. 678-681.)

presumption of innocence, raising a presumption of guilt, or reversing or lightening the People's burden to prove the defendant's guilt beyond a reasonable doubt. (*People v. Saddler*, *supra*, 24 Cal.3d at pp. 679-680 [considering CALJIC No. 2.62]; *People v. Rodriguez*, *supra*, at pp. 1066–1067 [considering CALCRIM No. 361 and following *Saddler*].) Thus, we conclude the *Watson* standard similarly applies to CALCRIM No. 361. (See *People v. Rodriguez*, *supra*, at p. 1067.) In applying that standard, we must determine whether it is reasonably probable the result would have been more favorable to defendant had the error not occurred. (*People v. Watson*, *supra*, at p. 836.)

CALCRIM No. 361 does not direct the jury to draw an adverse inference and contains other portions favorable to the defense, suggesting when it would be unreasonable to draw the inference and cautioning the failure to deny or explain evidence does not create a presumption of guilt. (*People v. Ballard* (1991) 1 Cal.App.4th 752, 756-757; see *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1472-1473.) Moreover, here, the trial court told the jury that not all the instructions were necessarily applicable (CALCRIM No. 200), and advised jurors to follow the instructions that applied to the facts determined by them, thereby "mitigat[ing] any prejudicial effect" related to the giving of CALCRIM No. 361. (*People v. Lamer*, *supra*, at p. 1472, see also *People v. Saddler*, *supra*, 24 Cal.3d at p. 684.) The prosecutor never argued the principles in CALCRIM No. 361 during closing argument. Consequently, because defendant did explain and deny the incriminating evidence, we can assume the jury disregarded CALCRIM No. 361 and defendant suffered no prejudice. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 139 [jury presumed to understand and follow instructions].)

Relying on *People v. Tealer* (1975) 48 Cal.App.3d 598, defendant argues the instruction encouraged the jury to believe the prosecution's evidence rather than defendant's. We find defendant's reliance on *Tealer* unpersuasive. There the issue was whether it was improper to instruct the jury with CALJIC No. 2.62 where the defendant's testimony was limited to the denial of making a statement. The court found the defendant's denial of making the statement did not place the truth of the statement in

14.

issue. Therefore, it would have been improper for the prosecutor to question the defendant regarding the general facts of the underlying offense. Thus, an instruction allowing the jury to consider the defendant's failure to explain or deny the evidence was improper as it had the effect of telling the jury it could infer guilt from silence. (*Id*. at pp. 605-607.) Because the decision in *Tealer* addressed a specific issue not present here, it is distinguishable.

Furthermore, we reject defendant's argument that CALCRIM No. 361 encouraged the jury to prefer the prosecution's evidence. The courts repeatedly have rejected similar complaints, whether directed at CALCRIM No. 361 or its predecessor, CALJIC No. 2.62. (See, e.g., *People v. Saddler*, *supra*, 24 Cal.3d at pp. 679–681 [CALJIC No. 2.62 does not impermissibly single out a defendant's testimony for scrutiny]; *People v. Mayberry* (1975) 15 Cal.3d 143, 160-161 [same]; *People v. Rodriguez*, *supra*, 170 Cal.App.4th at p. 1067 [CALCRIM No. 361 does not impermissibly single out a defendant's testimony for scrutiny].)

The jury was instructed pursuant to CALCRIM No. 200 to disregard any instruction that did not apply to the facts of the case. Additionally, the court instructed the jury with CALCRIM No. 226. That instruction informed the jury it was to decide the credibility of each witness and may believe all, part, or none of any witness's testimony. Additionally, the instruction advised the jury that, in evaluating each witness's credibility, it may consider: (1) whether the witness's testimony was influenced by bias, prejudice, or other factors; (2) whether the witness made a prior consistent or inconsistent statement; (3) the reasonableness of the testimony in light of other evidence; and (4) whether other evidence proved or disproved any fact about which the witness testified. Taken together, we conclude CALCRIM No. 361 did not impermissibly focus the jury on defendant's testimony. We presume the jury followed these instructions and ignored CALCRIM No. 361 if it found defendant had not failed to explain or deny evidence against him. (*People v. Saddler*, *supra*, 24 Cal.3d at p. 684; *People v. Lamer*, *supra*, 110

15.

Cal.App.4th at p. 1473; see *People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jury presumed to correlate and follow court's instructions].)

Further, courts also have routinely held the improper giving of CALCRIM No. 361 or its predecessor was harmless error because the language of the instruction is innocuous. (See, e.g., *People v. Rodriguez, supra*, 170 Cal.App.4th at pp. 1066–1068; *People v. Lamer, supra*, 110 Cal.App.4th at p. 1472 [collecting cases].) We agree. Here, the jury would have disregarded CALCRIM No. 361 as it was simply inapplicable to the case. The instruction "does not direct the jury to draw an adverse inference," and it "applies only if the jury finds that the defendant failed to explain or deny evidence." (*People v. Ballard, supra*, 1 Cal.App.4th at p. 756.) The instruction also "contains other portions favorable to the defense," such as "cautioning that the failure to deny or explain evidence does not create a presumption of guilt, or by itself warrant an inference of guilt, nor relieve the prosecution of the burden of proving every essential element of the crime beyond a reasonable doubt." (*Ibid.*; accord, *People v. Rodriguez, supra*, at pp. 1066–1067.) Under these circumstances, the instruction was harmless.

## II.     Claimed Sentencing Errors

Defendant makes several related arguments regarding the imposition of various fines during sentencing. He claims the court erred by imposing the fines without first determining his ability to pay, and further contends there is insufficient evidence in the record to support the imposition of the fines. In addition, he argues his trial counsel provided ineffective assistance by failing to object to these fines. We find defendant's arguments unpersuasive.

### A.     Defendant's claims are forfeited

At the sentencing hearing, the trial court imposed various fines, including a $750 presentence investigation report fee pursuant to section 1203.1b, an $800 section 294 fine, and a $40 section 1202.5 fine. Pursuant to the sections governing each of these fines, the trial court is required to first make a determination as to the defendant's ability

16.

to pay the fine.  (§§ 1203.1b, subd. (a), 294, subd. (a), 1202.5, subd. (a).)  Defendant did not object to the imposition of any of the above fines.

After briefing was completed in this case, our Supreme Court issued its opinion in *People v. McCullough* (2013) 56 Cal.4th 589 (*McCullough*).  There, the court addressed whether a defendant may challenge for the first time on appeal a booking fee imposed pursuant to Government Code section 29550.2, subdivision (a).  Like defendant, McCullough argued he could raise the issue of insufficiency of the evidence of his ability to pay the fee despite his failure to object in the trial court.  The court rejected this argument, noting it had "appli[ed] … the forfeiture bar to sentencing matters" in *People v. Welch* (1993) 5 Cal.4th 228, where it "held the defendant forfeited a challenge to the reasonableness of a probation condition because she failed to raise it when sentenced," and in *People v. Scott* (1994) 9 Cal.4th 331, where it "held the defendant forfeited a claim that the sentence imposed on him, 'though otherwise permitted by law, [was] imposed in a procedurally or factually flawed manner.'"  (*McCullough*, at p. 594.)  Citing *People v. Welch* and *People v. Scott*, the court stated:  "[W]e hold here that because a court's imposition of a booking fee is confined to factual determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal."  (*McCullough*, at p. 597.)  In announcing this holding, the Supreme Court also expressly disapproved of *People v. Pacheco* (2010) 187 Cal.App.4th 1392, the principal case relied upon by defendant in this appeal. (*McCullough*, at p. 599.)

Although a portion of the *McCullough* opinion contrasts the statute at issue there with several statutes, including section 1203.1b, which "provides procedural requirements or guidelines for the ability-to-pay determination" (*McCullough*, *supra*, 56 Cal.4th at p. 598), the court went on to explain: "We note these statutes because they indicate that the Legislature considers the financial burden of the booking fee to be de minimis and has interposed no procedural safeguards or guidelines for its imposition.  In this context, the rationale for forfeiture is particularly strong" (*id*. at p. 599).  However, as

17.

demonstrated above, the court in *McCullough* found the defendant's claim forfeited "*because* a court's imposition of a booking fee is *confined to factual determinations*." (*McCullough*, *supra*, at p. 597, italics added.) The discussion in *McCullough* summarized above provides additional support for, but is not essential to, the court's holding. The *McCullough* court's holding that the defendant's claim was forfeited was based on the nature of the claim, i.e., the fact that it required factual determinations. This rationale applies regardless of whether the statute in question does or does not provide procedural safeguards. Thus, we conclude the rule announced in *McCullough* is fully applicable to the fines at issue here.

Our conclusion on this point finds support in *People v. Valtakis* (2003) 105 Cal.App.4th 1066. In that case, the defendant argued the trial court erred in imposing a $250 fee because the court and probation officer did not follow the procedures articulated in section 1203.1b, including the provision of notice of the right to a court determination of his ability to pay. (*Valtakis*, at pp. 1070-1071.) Citing this notice provision and the statutory language that "[t]he defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver" (§ 1203.1b, subd. (a)), the defendant argued, "Without notice, … one cannot intelligently waive the right and therefore must be able to assert it for the first time on appeal" (*Valtakis*, at p. 1073).

The *Valtakis* court rejected this argument, relying in large part on *Welch* and *Scott*, and holding a defendant may not "stand silent as the court imposes a fee—even a nominal one like the $250 here—and then complain for the first time on appeal that some aspect of the statutory procedure was not followed." (*People v. Valtakis*, *supra*, 105 Cal.App.4th at p. 1075.) The court stated the language of section 1203.1b upon which the defendant relied could not be construed as "abrogating *Welch* and *Scott* …." (*Valtakis*, at p. 1075.) Here, too, as in *Valtakis*, defendant's failure to object to the section 1203.1b fee renders his claim noncognizable on appeal, notwithstanding the failure to comply with the procedural requirements of section 1203.1b.

18.

Furthermore, we note the Third Appellate District applied *McCullough* to the failure to object to a presentence investigation report fee pursuant to section 1203.1b in *People v. Snow* (2013) 219 Cal.App.4th 1148, 1151. This provides further support for our conclusion.[3]

Defendant presents a claim of insufficiency of the evidence to support the probation report fee, an issue requiring factual determinations. Defendant was aware the court might impose the probation report fee because the probation report recommended the court order him to pay it. Defendant not only failed to object to the probation report fee, he asserted no claim of inability to pay and made no request for a hearing on his ability to pay any of the fines or fees. His claim of error regarding the imposition of the probation report fee could have been readily corrected or avoided—and more appropriately reviewed on appeal—had defendant interposed a timely objection in the trial court. Under the reasoning of *McCullough*, we conclude defendant forfeited his challenge to the imposition of the challenged fees.

## B. Defendant was not denied effective assistance of counsel

Anticipating a finding of forfeiture, defendant argues his trial counsel was ineffective for failing to object to the above fees. We disagree.

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To establish ineffective assistance of counsel, "'a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to

---

[3]The issue of whether the forfeiture rule announced in *McCullough* applies to the failure to object to the imposition of attorney fees, probation supervision fees, presentence investigation fees, and criminal justice administration fees is currently pending before the California Supreme Court in *People v. Aguilar*, review granted November 26, 2013, S213571, and *People v. Trujillo*, review granted November 26, 2013, S213687.

19.

defendant ….'" (*People v. Lewis* (2001) 25 Cal.4th 610, 674.) Defense counsel's failure to object rarely establishes ineffective assistance. (*People v. Avena* (1996) 13 Cal.4th 394, 444-445.) "[W]hen the reasons for counsel's actions are not readily apparent in the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the appellate record discloses '"no conceivable tactical purpose"' for counsel's act or omission." (*People v. Lewis*, *supra*, at pp. 674-675; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 ["'"[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] … unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding."]; *People v. Ray* (1996) 13 Cal.4th 313, 349 ["In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission"].)

The record here does not indicate why defendant's counsel failed to object to the imposition of the fees. Indeed, it is entirely possible that defense counsel did not interpose an objection because she had knowledge defendant in fact had the ability to pay the fines. Defendant argues such reasoning amounts to speculation. We disagree. In *People v. Mendoza Tello*, our Supreme Court engaged in a similar analysis. There the issue was whether the defendant's trial counsel was ineffective for failing to bring a motion to suppress evidence. The record did not disclose the reason counsel failed to make such a motion. Because the officer was never asked at trial why he conducted the patdown search of the defendant, the officer was never given the opportunity to justify his actions. On such a record, the court could not merely assume there was no reason for the search. Indeed, the court explained, the defendant's counsel could have had knowledge of additional facts, irrelevant to the issues at trial and prejudicial to the defendant, which may have justified the search. (*People v. Mendoza Tello*, *supra*, 15 Cal.4th at p. 267.)

Likewise here, there was no objection to the fees at sentencing, thus there was no inquiry on the record into defendant's ability to pay.  The record does not disclose why defense counsel failed to object.  It is entirely possible defendant's attorney, who was privately retained, could have had knowledge defendant had the ability to pay the fines and that an objection to the fines would have been futile.  "Rather than attempt to glean inferences from a record where the critical questions were irrelevant and unasked, we do not reach the merits of that issue."  (*People v. Mendoza Tello*, *supra*, 15 Cal.4th at p. 268.)

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
FRANSON, Acting P.J.


_____
HOFF, J.*

---

*Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.