Filed 2/9/15  P. v. Schneider CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075279 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F04565) |
| v. | |
| CURTIS B. SCHNEIDER, | |
| Defendant and Appellant. | |

A jury found defendant Curtis B. Schneider guilty of unlawfully taking and driving a vehicle and of driving without a valid driver's license.  The court found true that defendant had five prior convictions involving "theft-related crimes," and that he had served four separate prior prison terms.  The court sentenced defendant to county jail for eight years.  On appeal, defendant's sole contention is the trial court prejudicially erred in instructing pursuant to CALCRIM No. 361 that the jury could draw adverse inferences from his failure to explain or deny matters asserted to be within his knowledge.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2013, at 7:20 a.m., police officers from the Sacramento Police Department's auto theft unit parked a bait car on a street in Sacramento. The bait car, a 1999 Acura, was equipped with electronic devices, including a GPS, which alerted the officers to anyone tampering with the car and permitted the officers to locate the car if it was driven off. The bait car was also equipped with internal audio/video devices. The information from the devices was transmitted to a police communication center, where it was logged into the computer aided dispatching (CAD) system. The officers left the bait car with its keys in the ignition and the doors unlocked.

At 11:17 a.m. that same morning, officers at the communication center were alerted that someone had entered the bait car and turned on the ignition. Officers were dispatched to locate the bait car, which they did, and followed it into a grocery store parking lot. There, an officer remotely disabled the bait car's engine and arrested the driver, who was defendant. The video in the bait car, which was played for the jury and which we have watched, shows that defendant was the only person driving the bait car from the time the video was first activated, i.e., 11:17 a.m., until he was arrested.[1]

Defendant testified that during the morning in question, he was walking to a convenience store when two persons, identifying themselves as Jeff and Jose, asked him if he wanted to buy an Acura that was parked nearby. Defendant asked what was the matter with the Acura, and was told there was nothing wrong with it mechanically, but that it was Jose's car and "[h]e couldn't have it in his name." Defendant agreed to buy the Acura for $500. Defendant gave Jeff and Jose $250 and agreed to pay the remainder when they gave him the "papers for the vehicle." Defendant got into the Acura and drove

---

[1] The "time stamp" on the video differs from real time by "about 25 minutes" because, as the officer who retrieved the video testified, the DVD had not been reset before it was used in the present case.

off. Defendant admitted four prior felony convictions which were "theft related" and one misdemeanor crime involving moral turpitude.

In rebuttal, Officer Ann Marie Howland testified that she spoke with defendant shortly after he was arrested. Defendant told her he had purchased the Acura from Jeff for $500, and that Jeff gave him the keys to the Acura. At no time in the conversation did defendant mention Jose. Defendant told Howland there was "only one guy" who he was dealing with and that guy was Jeff, who is Hispanic.

Brian Kelley, a used car manager for Elk Grove Acura, evaluated the Acura bait car and estimated its worth at $3,500.

DISCUSSION

Without objection, the trial court instructed with CALCRIM No. 361, regarding a defendant's failure to explain or deny adverse testimony: "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. [¶] If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

Defendant contends the trial court erred in giving CALCRIM No. 361 because there was no evidentiary basis for its applicability. "The appellate court may . . . review any instruction given . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (Pen. Code, § 1259.) Thus, we review the instruction to determine if it affected defendant's substantial rights. As we explain, it did not because there was no prejudice in the court giving this instruction.

"In order for [CALCRIM No. 361] to be properly given '[t]here [must be] facts or evidence in the prosecution's case within [the defendant's] knowledge which he did not

3

explain or deny.' [Citation.] A contradiction between the defendant's testimony and other witnesses' testimony does not constitute a failure to deny which justifies giving the instruction. [Citation.] '[T]he test for giving the instruction is not whether the defendant's testimony is believable. [CALCRIM No. 3.61] is unwarranted when a defendant explains or denies matters within his or her knowledge, no matter how improbable that explanation may appear.' " (*People v. Lamer* (2003) 110 Cal.App.4th 1463, 1469.)**2**

The People argue it was proper to give CALCRIM No. 361 because "[defendant] failed to either explain or deny . . . how he was able to obtain the car keys from Jeff when the CAD logs clearly showed that the keys remained inside the bait car until [defendant] opened the car door and started the ignition."

To the contrary, defendant did explain where he got the keys. The prosecutor asked defendant if he told "Officer Howland, 'I gave him the money, and he gave me the keys'; is that right?" Defendant responded, "Correct." On direct examination of Officer Howland, the prosecutor asked her if defendant told her how the "transaction occurred." Howland replied, "He stated that he gave Jeff $500, and Jeff gave him the keys . . . ." The record clearly shows that defendant was confirming that he got the keys from Jeff. That the People presented contrary evidence that defendant got the keys when he got into the Acura, as supported by the CAD records, is simply a contradiction in the evidence, not a failure to explain. Accordingly, CALCRIM No. 361 should not have been given. However, there was no prejudice in giving this instruction.

---

**2**     We have substituted CALCRIM No. 361 for CALJIC No. 2.62 in the *Lamar* analysis. The analysis is not affected by this change because "CALCRIM No. 361 is similar in content to CALJIC No. 2.62." (*People v. Rodriguez* (2009) 170 Cal.App.4th 1062, 1066.) Similarly, the parties have not differentiated cases involving CALJIC No. 262 from those involving CALCRIM No. 361 in making their arguments.

Defendant's testimony regarding how he obtained the Acura was in and of itself an utter stretch. He purchased a $3,500 Acura from Jeff and Jose for $500 in a chance encounter while walking down the street. Defendant gave them $250 and purportedly withheld $250 until they provided him with the car's "papers." Prior to the sale, defendant never examined the Acura nor drove it; instead, he trusted Jeff and Jose's representation that there was nothing mechanically wrong with it, and that Jose had to sell the vehicle because he could not get title to it. Moreover, the bait car's CAD logs and the car's video showed that the only person entering the bait car between the time the officer left it on the street and when it was driven off was defendant. Given these facts, there was no prejudice in giving CALCRIM No. 361. Thus, the substantial rights of defendant were not affected.

## DISPOSITION

The judgment is affirmed.

                              ROBIE          , Acting P. J.


We concur:



      BUTZ          , J.



      MURRAY        , J.

5