Filed 1/7/16  P. v. Powell CA3
Per court order 10/1/15 filing vacated

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Trinity)

----

| | |
|---|---|
| THE PEOPLE, | C075764 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F008) |
| v. | |
| JOHN ROBERT POWELL, | |
| Defendant and Appellant. | |

A jury found defendant John Robert Powell guilty of the lesser offense of second degree murder. The trial court sustained a firearm allegation. It then sentenced him to state prison for 40 years to life.

Defendant contends there was prejudicial misconduct in the prosecutor's closing arguments. He also challenges the trial court's employment of the pattern instruction on a defendant's failure to explain or deny adverse evidence. We shall affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Given the arguments on appeal and our disposition of them, we do not need to detail the testimony at trial extensively. This was one of Tolstoy's unhappy families. (Tolstoy, Anna Karenina (1877).)

The victim was defendant's stepfather, who adopted him at an early age. By all accounts, the two never had a good relationship. The victim was jealous of his wife's fondness for her son; the victim was cold-hearted toward defendant, belittling him and dismissive of the efforts he made to please him. The victim was also physically abusive toward defendant and his sister. Defendant had been an intelligent and sensitive child, and a star athlete in high school.

After dropping out of community college in Shasta, defendant moved back home, living with friends instead of with his mother and the victim. He had trouble finding a job, and began using marijuana and methamphetamine. His mother would visit him, but he came to her home only on holidays.

In January 2012, the victim called his wife at work early in the morning to insist that she report defendant to the sheriff for riding off on their horse. She made the call. The victim called back about an hour later to tell her that defendant had returned the horse. A couple of days later, his mother heard over a scanner that deputies had taken defendant into custody.

The following Monday, defendant's mother left for work. The victim was sitting in his chair watching television. When she returned from work early in the evening, she found the victim dead in his chair. He had been shot twice in the head with a rifle.

After his arrest, defendant at first denied any involvement in the shooting. He then told the deputy that there had been a struggle between him and the victim, in the course of which he grabbed a nearby rifle and shot him because he thought the victim was reaching for something. Defendant eventually admitted he had shot the victim as he was

sitting in the chair, having gone to the house with an intent to kill the victim and then himself. He also told the deputy he did not think the first shot had killed the victim, so he fired a second.

Defendant testified that when he returned the horse, the victim threatened to shoot him as a horse thief if he ever came back to the house. On his arrest, he felt the victim had turned his mother against him. After his release from jail on the weekend, he smoked some marijuana and snorted methamphetamine. He felt he needed to resolve the issue with the victim, and walked to his parents' home. He brought his rifle with him because the victim owned guns and had threatened to shoot him before, and he was in a paranoid state as a result of the drugs. He walked in the front door. The victim gave him a hate-filled look and started to get up out of his chair, one arm reaching behind him. Defendant felt scared and fired two shots at him. He admitted that the shooting was not justified, but he had acted simply on instinct without any intent to kill the victim. In a panic, he took some cash from the victim's wallet and his car keys, hid the rifle in a hollow tree wrapped in his sweatshirt, and threw the two empty rifle casings (which he had put in his pocket) into the Mad River. He disposed of the wallet and keys.

## DISCUSSION

### I. The Claim of Prosecutorial Misconduct Is Forfeited

Defendant asserts the prosecutor committed misconduct in closing argument in several respects. In connection with the option of voluntary manslaughter, he purportedly misstated the prosecution's burden of proof of the absence of heat of passion, the nature of the objective element of heat of passion, the basis of provocation being in either words *or* acts, and the need to find a lack of intent to kill. Defendant also argues the prosecutor improperly asserted that a verdict of voluntary manslaughter would result in defendant being "cut loose." He admits his trial counsel did not object to any of these comments,

3

making the customary claim that there could not have been any reasonable tactical basis for this failure to object, particularly during the rebuttal argument.

Failure to lodge a contemporaneous objection and a request for an admonition forfeits any claim of prosecutorial misconduct, except where a defendant affirmatively establishes that it was irremediable or it was futile to object, with more than a "ritual[ized] incantation" to this effect. (*People v. Panah* (2005) 35 Cal.4th 395, 462.) Defendant does not assert this misconduct was irremediable, nor does he claim futility.

Defendant's attempt to reach the issue under the guise of ineffective assistance of trial counsel fails in two regards. In the first place, direct appeal is almost inevitably the inappropriate forum for establishing that the inherently tactical choice of failing to raise an objection to misconduct fell below reasonable professional standards. (*People v. Lopez* (2008) 42 Cal.4th 960, 966, 972.) In the second place, defendant does not provide anything more than a perfunctory analysis of *how* the failure to object in each instance did not meet objective professional standards; "[t]his will not suffice" (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 466-467 [rejecting claim of ineffective assistance on this basis]). Trial counsel could simply have believed that any misstatements regarding the law of voluntary manslaughter were not of any moment in light of his own argument and the oral and written instructions (the latter of which the prosecutor expressly admitted were controlling if his argument contradicted them), and could have found the reference to defendant being "cut loose" was not particularly inflammatory. As a result, we will not countenance this exercise in second-guessing of trial counsel. Given the forfeiture, we need observe only in passing that in any event the posited misconduct could not have been prejudicial to defendant, because the record does not even contain substantial evidence of any objectively reasonable provocation on the victim's part that would

4

warrant the lesser offense of voluntary manslaughter[1] and we do not find there is a reasonable probability that the purported misconduct affected the result in this trial. (*Breverman*, *supra*, 19 Cal.4th at pp. 177-178 ["In making that evaluation, an appellate court may consider . . . whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result."].)  Even if the evidence of the basis for defendant's anger were marginally sufficient to warrant an instruction, we do not believe that it would persuade reasonable jurors to find he acted in a heat of passion.

## II.  The Pattern Instruction on Failure to Explain Evidence Is Constitutional and Warranted

Without any discussion of the basis for it, the trial court stated that it would give the pattern instruction that the jury could "consider" the meaning or importance of any failure in defendant's testimony to give reasonably expected explanations or denials of evidence against him.  Defendant argues the instruction lacked any evidentiary basis and, thus, it was error to give it.  Defendant also asks us to reconsider the holdings in *People v. Rodriguez* (2009) 170 Cal.App.4th 1062, 1066-1067 and *People v. Saddler* (1979) 24 Cal.3d 671, 680-681, which upheld the current and prior versions of the pattern instruction against constitutional claims that it impermissibly singles out a defendant's testimony for this heightened scrutiny (Evid. Code, § 413 permits focus on a party's

---

[1]  In order to be entitled to an instruction on sudden quarrel or heat of passion, there must be evidence that a defendant's reason was clouded "as the result of a strong passion," the cause of which was provocation sufficient to arouse an intense emotion *other than revenge* in a *reasonable* person that overcomes the ability to act on the basis of reason and due deliberation.  (*People v. Breverman* (1998) 19 Cal.4th 142, 163 (*Breverman*); *People v. Steele* (2002) 27 Cal.4th 1230, 1252-1253; *People v. Lee* (1999) 20 Cal.4th 47, 59-60; *People v. Valentine* (1946) 28 Cal.2d 121, 139.)

failure to give reasonably expected explanations or denials), impermissibly reduces the burden of proof, or implicates a defendant's right to testify.

Defendant concedes that giving an abstract instruction—one which is correct but irrelevant—is generally a technical error that does not warrant reversal absent a showing of a reasonable likelihood that it caused prejudice. (*People v. Cross* (2008) 45 Cal.4th 58, 67; *People v. Roehler* (1985) 167 Cal.App.3d 353, 393.)

The only evidence the People can muster as a basis for the instruction are three instances in defendant's testimony. Having taken the victim's wallet and car keys, he discarded them because he did not "want them on [him]," a reaction he could not explain. He also did not have a reason for wrapping the rifle in the sweatshirt. Finally, he could not explain why he told the deputy that he fired the second shot to make sure the victim was dead, because he did not think any thought process occurred between the two shots. These would hardly seem to be material matters warranting the instruction.

Defendant does not identify any case in which an unwarranted instruction to this effect was found prejudicial. We would presume that if the evidence did not support the instruction, the jury would simply apply the pattern admonition that some instructions may not apply and therefore it should not assume any facts that an inapplicable instruction might suggest. Other than speculate that the jury applied the instruction to his testimony, defendant does not demonstrate any specific manner in which this is reasonably likely, particularly where the prosecutor never even adverted to the instruction. Given the strong evidence of his shooting the unarmed victim and his admission in his statement that he shot twice to make certain that the victim was dead, we do not find any possibility of prejudice.

As for his request to reconsider settled and controlling authority, we decline the invitation. *People v. Harris* (1989) 47 Cal.3d 1047, 1098-1099 is not a basis for any departure from these rulings. The case upheld the refusal of a pinpoint instruction on the

6

effect of intoxication on the perception or memory of a witness where it would apply to only one of the witnesses at trial. That does not have any application to the instruction under challenge here.

## DISPOSITION

The judgment is affirmed.


     BUTZ     , Acting P. J.


We concur:


     MAURO     , J.


     RENNER     , J.